# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DONALD PEA (#457171)**                                                          **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN, ET AL.**                                          **NO. 12-0779-SDD-RLB**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on January 2, 2014.

                                          **RICHARD L. BOURGEOIS, JR.**
                                          **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD PEA (#457171)                                              CIVIL ACTION

VERSUS

N. BURL CAIN, WARDEN, ET AL.                           NO. 12-0779-SDD-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion for Summary Judgment of the remaining defendant in this case, Lt. Greg Templeton (Rec. Doc. 22).  This motion is opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain, Ass't Warden Joe Lamartiniere, Ass't Warden Darrel Vannoy, Ass't Warden Troy Poret, Sgt. R. Frye, Major Whittaker, Capt. Feasel (also referred to as "Feisel," "Fease" and "Feasei"), Sgt. Geoffery Crosby (identified as Geoffery "Crasby" in the Complaint) and Lt. Greg Templeton, complaining that his constitutional rights were violated on September 11, 2011, when defendants Templeton, Frye and Crosby subjected him to excessive force.  In addition, the plaintiff asserted that the alleged use of excessive force was in retaliation for his prior commission of a rule violation and that the defendants compelled him to take a hot shower after the incident, thereby worsening the effect of the chemical irritant which had been used against him.  Finally, the plaintiff complained that defendants Cain, Poret and Whittaker failed to take remedial action after being informed of the alleged wrongful conduct of the other defendants.  Pursuant to Earlier Magistrate Judge's Report in this case, approved by the District Judge on July 10, 2013 (Rec. Docs. 17 and 21), the plaintiff's claims asserted against all defendants except Lt. Greg

Templeton have been dismissed.

Defendant Greg Templeton now moves for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the Chemical Agent Logbook for the date September 11, 2011, a certified copy of LSP Directive No. 09.002 (relative to "Use of Force"), certified copies of four (4) disciplinary reports issued against the plaintiff on September 11, 2011 (charging the plaintiff with one count of Theft, three counts of Aggravated Disobedience and three counts of Defiance), a certified copy of an Unusual Occurrence Report dated September 11, 2011 (prepared by defendant Templeton), certified copies of the plaintiff's pertinent disciplinary records and medical records, and the affidavits of Geoffery Crosby, Dr. Jason Collins and defendant Greg Templeton.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).

   As pertinent to the claim remaining before the Court, the plaintiff alleges that on the morning of September 11, 2011, he was involved in a confrontation with defendants Templeton, Frye and Crosby, during which these defendants subjected him to irritant spray notwithstanding that he was in full restraints and was providing no provocation or justification for the use of force.  The plaintiff further asserts that this conduct was undertaken in retaliation for his having previously committed a rule infraction and that the use of irritant spray was inappropriate inasmuch as he suffers with asthma.  In the plaintiff's memorandum in opposition to the Motion for Summary Judgment (Rec. Doc. 26), he has provided additional factual information relative to these claims.  Specifically, the plaintiff alleges that he was approached by defendant Templeton on the afternoon of the referenced date and was falsely accused of having stolen some chicken from the food cart in his housing unit.  As a result, defendant Templeton placed the plaintiff in behind-the-back restraints and escorted the plaintiff to an administrative segregation tier to await

a hearing on the disciplinary charge. The plaintiff alleges that, instead of placing him in a regular cell on the segregation tier, defendant Templeton placed the plaintiff in the shower cell on the tier. The plaintiff contends, contrary to the assertions of defendant Templeton, that the defendant did not remove the plaintiff's restraints upon placing him in the shower cell. The plaintiff also disputes the defendant's assertion (1) that the plaintiff thereafter began to cause a loud disturbance on the tier, yelling and "racking the bars" of the shower cell and disobeying repeated orders to cease the disturbance and come to the bars of the cell to be restrained, and (2) that the defendant then utilized only a brief one-second application of chemical irritant spray in order to obtain the plaintiff's compliance. Instead, the plaintiff asserts that defendant Templeton, without justification and without provocation, sprayed a large amount of chemical agent into the plaintiff's cell. The plaintiff further argues that the defendant's assertions to the contrary are not credible because, in fact, the plaintiff was physically *unable* to rack the bars because his hands were still in behind-the-back restraints, and he could not have disobeyed orders to come to the bars of the cell to be restrained because he was already in restraints. In addition, the plaintiff asserts that the amount of chemical agent utilized by the defendant was much more than a one-second application. Instead, the plaintiff asserts that eight (8) grams of chemical agent was utilized by the defendant and that this quantity equates to more than a one-second burst. The plaintiff also asserts that the defendant utilized the entirety of a separate "personal" can of chemical agent which the defendant had in his possession.[1]

---

1. In his Complaint and supporting pleadings, the plaintiff alleges that two other defendants joined Lt. Templeton in spraying chemical irritant into the plaintiff's cell on the referenced date, Sgt. R. Frye and Sgt. Geoffery Crosby. These defendants have been dismissed from this proceeding, however, with defendant Frye having been dismissed because of the plaintiff's failure to timely serve the defendant, and with defendant Crosby having been dismissed because of the plaintiff's failure to exhaust administrative remedies relative to that defendant. *See* Rec. Doc. 17.

In addition to the foregoing, the Court notes that the plaintiff's Opposition to the defendant's Motion for Summary Judgment (Rec. Doc. 26) provides additional factual information which seemingly contradicts certain of the assertions made in his original Complaint.  For example, whereas the plaintiff alleged in the Complaint that the defendant compelled him to take a hot shower after the referenced incident, the plaintiff asserts in his Opposition that the defendant refused to allow him to take a shower until the next day.  In addition, the plaintiff alleged in the Complaint that the defendant's action were motivated by retaliatory animus in response to the plaintiff's "alleged previous rule violation," the plaintiff states in his Opposition that the defendant was retaliating against the plaintiff for having assaulted a co-inmate several weeks previously, which co-inmate the defendant utilized as a "snitch" or confidential informant at the prison.  Finally, the plaintiff's Opposition asserts a new claim that was not included in either the original Complaint or in the plaintiff's pertinent administrative grievance, specifically that there was a delay of approximately two hours between the application of chemical agent on the referenced date and the provision of appropriate medical attention thereafter.

Initially, the Court notes that the plaintiff has named the defendant herein in both the defendant's individual and official capacities.  Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks the recovery of monetary damages against a state official acting in an official capacity because such official is not seen to be a "person" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989).  Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit

against the State and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim for monetary damages asserted against the defendant in the defendant's official capacity is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendant in the defendant's individual capacity remains viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. *Id.*[2]

Turning to the plaintiff's claim for monetary damages asserted against the defendant in the defendant's individual capacity, the defendant contends that he is entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendant asserts that the plaintiff will be unable to present evidence sufficient to establish that the defendant participated in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as

---

2. Although the plaintiff makes a statement in the body of his Complaint that he is seeking "injunctive relief" (Rec. Doc. 1 at p. 6), and although a claim for injunctive relief asserted in federal court against a defendant official acting in the defendant's official capacity is not prohibited under the Eleventh Amendment (because such a suit is not treated as an action against the State), *Will v. Michigan Department of State Police, supra,* 491 U.S. at 71; 15 *Am. Jur. 2d Civil Rights* § 101, the plaintiff does not include any prayer for injunctive relief in the Complaint. To the contrary, in the "Relief Requested" section of the Complaint, the plaintiff prays only for monetary damages. *Id.* at p. 10. Accordingly, the Court declines to address the plaintiff's claim for prospective injunctive relief.

a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[3]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court concludes that the defendant's motion should be granted in part and denied in part. Specifically, the Court finds that the plaintiff's allegations and evidentiary showing are sufficient to create a genuine issue of material fact relative to his claim of alleged excessive force, but are not sufficient to overcome the defendant's assertion of qualified immunity relative to the remaining claims.

First, with regard to the plaintiff's claim that his constitutional rights were violated through the use of excessive force, it is well-settled that the "core judicial inquiry" in evaluating an excessive force claim under the Eighth Amendment to the United States Constitution is whether the force was applied maliciously and sadistically for the very purpose of causing harm

---

3. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial," the *Callahan* Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Although the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force (provided that such force is not of a sort "repugnant to the conscience of mankind"), *Hudson v. McMillian*, *supra*, 503 U.S. at 10, an inmate who is subjected to gratuitous force by a prison official "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard, the Court concludes that although the issue is a close one, there are disputed questions of fact which preclude summary judgment in connection with the plaintiff's claim of alleged excessive force. Specifically, the plaintiff asserts in a sworn statement that defendant Templeton placed the plaintiff in the administrative segregation shower cell on September 11, 2011 and, without justification or provocation, sprayed a large amount of chemical irritant into the plaintiff's cell, notwithstanding that the plaintiff was fully restrained at the time and notwithstanding that the plaintiff informed the defendant that he suffers with asthma. The plaintiff asserts that the application of chemical agent rendered him unconscious, that he was not allowed to shower (or conversely that he was *compelled* to shower in hot water), and that he was not seen by a medical officer until approximately two hours later. In addition,

the plaintiff asserts that the chemical agent caused great discomfort which persisted for several days thereafter, and that he has since suffered with vision deficits and hair loss as a result of the defendant's conduct.

In response to the plaintiff's assertions, the defendant has presented affidavits attesting that, after the plaintiff was placed in the shower cell on the referenced date, the plaintiff's restraints were removed and he began to cause a loud disturbance, yelling and "racking" the bars of the cell. In response, the defendant gave the plaintiff several orders to cease the disturbance and to come to the bars of the cell to allow himself to be restrained.[4] When the plaintiff refused these orders, the defendant obtained a can of chemical irritant and, after again ordering the plaintiff to come to the bars of the cell, sprayed a one-second burst of chemical agent into the plaintiff's cell in an attempt to obtain compliance. According to the defendant, the plaintiff then complied with the defendant's directives, was allowed to shower without further incident, was provided with a clean jumpsuit, and was seen by a medical technician. The defendant points to a medical report which was prepared by the medical technician after the incident and notes that that report reflects that the plaintiff voiced no complaints whatever and had no objective signs of injury resulting from the use of chemical irritant. The defendant asserts, therefore, that the evidence shows that only a minimal amount of force was utilized on the date of the incident and that this force was not greater than was necessary to obtain compliance from a contentious and

---

4. The Court notes that whereas the defendant asserts in his affidavit that he repeatedly ordered the plaintiff to cease the disturbance on the date of the incident and to "come to the cell bars to be restrained," *see* Rec. Doc. 22-4, the disciplinary report, Unusual Occurrence Report and ARP Statement prepared by the defendant contemporaneously with the incident make no reference to any orders to the plaintiff to come to the bars of the cell to be restrained, *see* Rec. Doc. 11-1 at pp. 10, 11 and 14.

recalcitrant inmate.[5]

The competing assertions of the parties present issues of credibility which are not susceptible of resolution on summary judgment. Accepting the plaintiff's sworn assertions as true and applying the factors relevant to an excessive force inquiry, the Court first notes that, although the defendant points to the alleged absence of reported or observable injury as justification for the grant of summary judgment, the plaintiff asserts that he experienced pain for several days after the incident (and also permanent complications thereafter), and the law is clear in any event that no specific quantum of injury is necessary to support a claim of excessive force, and even minor injuries alone do not justify dismissal.[6] *See Martin v. Seal*, 510 Fed. Appx. 309 (5th Cir. 2013) (overturning the district court's denial of qualified immunity to a prison security officer in connection with a claim of excessive force where the district court failed to properly consider the relevant factors, including *inter alia* the extent of injury or lack thereof, noting the conflict between the defendants' assertion that the plaintiff sustained no injury from an application of irritant spray and the plaintiff's competing assertion that much more spray was utilized than the defendants admitted). *See also Comeaux v. Sutton,* 496 Fed. Appx. 368, 371 (5th Cir. 2012) (noting that the plaintiff's minimal injuries, described as "a bruised lip" and "two superficial scrapes," did not relieve the defendants of liability for excessive force); *Brown v. Jones*, 471 Fed. Appx. 420 (5th Cir. 2012) (finding that the plaintiff's claim of injury, resulting

---

5. The defendant has produced evidence indicating that only a single can of irritant spray was utilized during the incident involving the plaintiff on September 11, 2011, and that the can weighed 74 grams prior to the incident and 66 grams afterward. *See* Rec. Doc. 22-6. The defendant has provided no evidence, however, indicating what this amount of irritant spray, 8 grams in total, equates to in any practical sense.

6. The plaintiff also asserts that the medical officer falsified the resulting medical records and lied about the extent of the plaintiff complaints after the incident in order to assist the defendant in covering up the plaintiff's claim of excessive force.

from being allegedly grabbed and struck in the groin, was sufficient to overcome the defendants' motion for summary judgment). This is particularly true where, as here, accepting the plaintiff's sworn version of events as true, there was no need for the use of force and no threat reasonably perceived by the defendant security officer because the plaintiff asserts that he was within a cell, was restrained in behind-the-back restraints, was not disobeying orders or causing a disturbance, and was offering no justification for any use of force against him. *See Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) ("Needless to say, '[t]he amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed'"). *See also Chambers v. Johnson*, 372 Fed. Appx. 471 (5th Cir. 2010) (recognizing that if, as the plaintiff asserted, he complied with the orders of security officers, "then the defendants could not have reasonably perceived any threat requiring a need to use force"); *Peterson v. Peshoff*, 216 F.3d 1079 (5th Cir. 2000) (finding that an inmate's plaintiff's claim "that correctional officers used excessive force by wantonly and maliciously spraying him with mace without provocation while he was confined in his cell" was not frivolous). Finally, the fact that the plaintiff, who suffers with asthma, was not seen by a medical officer until approximately two hours after the application of chemical agent suggests that little action was taken by the defendant to temper the severity of the irritant spray. *See Martin v. Seal, supra*, 510 Fed. Appx. at 313 (5th Cir. 2013) (noting that it was relevant that security officers "arranged for the provision of medical care immediately after each spraying" and "offer[ed] [the plaintiff] a shower after each incident"). On this showing, therefore, summary judgment should be denied relative to the plaintiff's claim of excessive force.

In contrast to the foregoing, the Court finds that the defendant is entitled to qualified immunity in connection with the plaintiff's remaining claims. First, the plaintiff asserts that the

actions of the defendant were motivated by retaliatory animus in response to the plaintiff having committed a prior rule violation or, conversely, in response to the plaintiff having physically assaulted a co-inmate several weeks previously.  In this regard, the taking of action against an inmate in retaliation for the inmate's exercise of his constitutional rights may be a violation of the inmate's constitutional rights.  *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996).  However, a claim of retaliation made by a prison inmate is regarded with skepticism, lest the federal courts potentially become embroiled in every adverse act that may occur within a penal institution.  *Id.* at 1166.  Accordingly, to prevail on a claim of retaliation, a prisoner must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intended to retaliate against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is sufficient causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred.  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.), *cert. denied*, 549 U.S. 1038 (2006).  *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  If an inmate is unable to point to his exercise of a specific constitutional right, then his claim will fail as a matter of law.  *See Tighe v. Wall*, 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the exercise of a specific constitutional right); *Woods v. Smith, supra*, 60 F.3d at 1166 (observing that, "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right").  Further, the inmate must allege more than a mere personal belief that he is the victim of retaliation.  *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997).  Finally, to demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must

produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166.

In the instant case, the plaintiff's claim of retaliation fails as a matter of law. First, he fails to identify any specific constitutional right which he was attempting to exercise and which prompted the alleged wrongdoing by the defendant. All that the plaintiff alleges in this regard is that the defendant retaliated in response to "an alleged previous rule violation" committed by the plaintiff, Rec. Doc. 1 at p. 7, or conversely, that the defendant retaliated in response to the plaintiff having assaulted a co-inmate several weeks earlier, Rec. Doc. 26-1 at p. 2. Notwithstanding, the plaintiff does not have a constitutional right either to violate prison rules or to physically assault other inmates. Accordingly, the plaintiff's allegations fail to meet the first part of the test because he fails to identify a specific constitutional right which he sought to exercise. Moreover, the plaintiff states no more than his personal belief that the alleged wrongful conduct was undertaken with retaliatory intent, and he provides no chronology of events from which a retaliatory motive may plausibly be inferred. In short, there is no basis in the record for a finding that the defendant was acting with retaliatory purpose and, accordingly, the plaintiff has failed to state a claim upon which relief may be granted relative to this issue.

Finally, the plaintiff alleged in his Complaint that after the application of chemical agent on September 11, 2011, the defendant compelled the plaintiff to take a hot shower and that the hot water worsened the effect of the chemical agent. *See* Rec. Doc. 1 at p. 8. Not only is this claim belied by the plaintiff's subsequent assertion that the defendant *refused* to allow the plaintiff to take a shower, but to the extent that the plaintiff seeks by this assertion to state a claim that the defendant was deliberately indifferent to the plaintiff's health or well-being, this claim should also be rejected. Specifically, in the context of a claim that a prison security officer

has subjected an inmate to an deleterious condition of confinement, the law is well-settled that "[t]he Constitution ... 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation" (citations omitted)). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Accordingly, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition be sufficiently serious, depriving a prisoner of "the minimal civilized measure of life's necessities," or denying the prisoner some "basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter, supra*. Second, under a subjective standard, the Court must find that the prison official responsible for the deprivation was "'deliberately indifferent' to inmate health or safety." *Wilson v. Seiter, supra*, 501 U.S. at 303. *See also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Mere negligence is not a sufficient basis for liability under § 1983. *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). Instead, a prison official must both be personally aware of facts from which an inference may be drawn that a substantial risk of serious harm exists, and the official must also draw the inference in fact. *Farmer v. Brennan, supra,* 511 U.S. at 837.

Applying the foregoing standard, the Court concludes that the plaintiff's claim regarding the alleged hot shower should be rejected. The plaintiff's assertion in this regard is entirely conclusory, and he does not assert (1) that he complained to the defendant about the hot water, (2) that the defendant intended for the shower to cause the plaintiff additional harm, or (3) that the defendant was subjectively aware that the plaintiff faced a substantial risk of serious harm as a result of this condition. Moreover, the medical record generated after the incident reflects that the plaintiff made no complaint whatever regarding having been compelled to take a hot shower,

and there were no noted objective findings consistent with exposure to hot water.  Finally, the plaintiff's assertions relative to the hot water are not deserving of credibility in any event because of his subsequent contradictory assertion that he was *denied* an opportunity to take a shower until the next day.  *See* Rec. Doc. 26-1 at p. 3.  Accordingly, on this showing, the Court is unable to find that the defendant was deliberately indifferent to a perceived substantial risk of serious harm to the plaintiff's health or safety which the defendant ignored.  Summary judgement, therefore, is appropriate in connection with this claim.[7]

The plaintiff also seeks to invoke the supplemental jurisdiction of this Court in connection with claims arising under state law.  A district court, however, may decline the exercise of supplemental jurisdiction if the plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case,

---

7. The Court declines to interpret the plaintiff's Opposition Memorandum, Rec. Doc. 26, as an amendment to the Complaint.  In that Memorandum, the plaintiff complains of the defendant's alleged refusal to allow him to shower after the incident and also complains that he was not provided with medical care until approximately two hours after the incident.  The plaintiff did not assert these claims either in his original Complaint or in the administrative grievance which he filed relative to the claims asserted in this proceeding.  Further, even if the defendant did in fact refuse to allow the plaintiff to take a shower after the incident, this claim is not one of constitutional dimension.  Specifically, courts which have addressed this issue have concluded that a failure to allow an inmate to shower after an application of irritant spray is not the type of wrongdoing that rises to the level of deliberate indifference.  *See Roach v. Caddo Parish Sheriff's Dept.,* 2010 WL 420068 (W.D. La., Jan. 29, 2010); *Dufrene v. Tuner*, 2006 WL 2620091 (W.D. La., Aug. 14, 2006).  Moreover, with regard to the alleged failure to provide medical treatment for a two-hour period, the law is clear that a mere delay in providing medical treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Inasmuch as there is nothing in the record that suggests that the plaintiff suffered substantial harm as a result of the alleged two-hour delay, this claim is without merit as a matter of law.

considering the allegations of the plaintiff's Complaint and the recommendation of the Court that all of the plaintiff's claims be dismissed except his claim pertaining to the alleged use of excessive force on September 11, 2011, the Court recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims. It is further recommended that the Motion for Summary Judgment of defendant Greg Templeton (Rec. Doc. 22) be granted in part, dismissing all of the plaintiff's claims asserted against the defendant except the plaintiff's claim for monetary damages asserted against the defendant in the defendant's individual capacity arising out of the alleged use of excessive force on September 11, 2011, and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on January 2, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**